## Continuation of Criminal Complaint

1.  I, Jay D. Johnston, am a Special Agent with the Federal Bureau of Investigation (FBI) and have held this position since September, 1999. Prior to my employment with the FBI, I was a Deputy Sheriff for over 8 years. I am currently assigned to the Marquette Resident Agency of the Detroit Field Office, with a duty to investigate violations of federal criminal law, including mailing threatening communications, which is a violation of 18 United States Code (U.S.C.) § 876(c). During my career with the FBI, I have investigated numerous allegations relating to threats that constituted violations of state and federal laws, to include specifically Title 18, U.S.C. § 876(c). I have participated in investigations of persons suspected of this offense. I have gained experience through training in seminars, classes, and everyday work related to these types of investigations.

2.  This continuation is offered in support of a Criminal Complaint charging Lee Dalton Foster, born on a known date in 1967, with threatening interstate communication. The information set forth in this continuation is based on my investigation, as well as information communicated to me by Michigan State Police (MSP) Trooper Tyler Barthelemy and FBI SA Jacob Collins, Atlanta Division. Because this continuation is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Lee Dalton Foster committed a violation of 18 U.S.C. § 876(c).

3. This continuation is intended to set forth evidence to establish probable cause to believe that on or about August 2, 2019, Lee Dalton Foster unlawfully sent a threatening communication through the U.S. mail to Trooper Barthelemy's personal residence, which is at a known address in Moran Township, Mackinac County, Michigan.

4. On August 5, 2019, Trooper Barthelemy's fiancée, S.S., retrieved the mail from the mailbox in front of the residence she shares with Trooper Barthelemy. She opened an envelope addressed to "T Bartholemy" (misspelled last name), with a return address of "J. Smith, 69 Cedar Ln. Sault, MI." Upon opening the envelope, she located a newspaper clipping that had a picture of Trooper Barthelemy and the former MSP St. Ignace Post Commander, Lt. Natalie King, as well as other persons. The photo had the words, "dead cop" with an arrow pointing to Trooper Barthelemy's head; "I'm going to put a bullet here," with another arrow pointing to Trooper Barthelemy's head; and "All FASCIST Pigs Must die," with an arrow pointing to Lt. King. Trooper Barthelemy's name was circled in the caption below the photo.

5. It was determined that the photograph was from a December 14, 2017 St. Ignace News article. The article related to a Mackinac County Children's Toy Drive. A copy of the photograph and envelope are embedded below.



6.  Investigation determined that 69 Cedar Ln. Sault, MI is an invalid address.

7.  Upon examining the December 14, 2017 edition of the St. Ignace News newspaper, it was determined that Foster's nephew, T.S., was featured for sport accomplishments twice in that edition. That nephew committed suicide in approximately March, 2019.

8.  Trooper Barthelemy has not had any negative contact with Foster as a Trooper, but while growing up in the same small town of Brevort, Michigan (2017 population 570), Trooper Barthelemy did have negative personal contact with Foster. The first incident was

3

approximately 16-17 years ago, when Barthelemy was approximately 8 or 9 years of age. Barthelemy and his brother, who is 3 years older, were playing with bottle rockets in their front yard, where Barthelemy still resides. The two boys looked up and observed Foster approaching them from across the highway, which is the direction of Foster's then and current residence. Foster was cursing at them and using the "F-bomb," apparently upset over their use of bottle rockets. Barthelemy's father, E.B., was out of view on the back porch, but came around the house and confronted Foster about yelling and cursing at his two young sons. The confrontation did not get physical, but Foster appeared intimidated and left.

9. The only other incident that Trooper Barthelemy believes was related to Foster was when Barthelemy was approximately 15 or 16 years of age. Barthelemy would ride his motorcycle down the road in front of Foster's residence and would sometimes cut across a field located adjacent to Foster's property, while coming back from nearby trails. There was no trail in the field, but Barthelemy and others would routinely cut across that field on their way to a gas station, and for Barthelemy, on his way home.

10. From his previous travels, one could see in the high grass where Barthelemy had routinely cut across the field. On one such trip, Barthelemy found an approximately one foot long piece of wood, with several nails facing upwards in the high grass. The board had apparently been intentionally left in the middle of Barthelemy's frequent path, with the intention of popping either Barthelemy's or someone else's tires.

11. Barthelemy, who again was 15 or 16 years of age at the time, immediately suspected that Foster had placed the boards there, because of Foster's disposition and the proximity to Foster and his parents' residence. Barthelemy grabbed the board, drove to Foster's residence and threw the board in Foster's driveway. Barthelemy had no actual contact with Foster on that day and he does not know if Foster observed him throw the board in his driveway.

12. On August 7, 2019, I and other law enforcement officers attempted to make contact with Foster at N4392 School House Road. His mother and step-father, T.S. and J.S., advised that Foster resides with them at their residence. They added that he is an over-the-road truck driver and typically comes home every two to three weeks when he gets a three day weekend. He last arrived home on or about August 1, 2019 and left on August 5, 2019. The envelope containing the threat was postmarked in Traverse City, Michigan on August 2, 2019.

13. On August 9, 2019, at the request of FBI Detroit, Special Agent Jacob Collins, FBI Atlanta, and Federal Task Force Officer Charles Greene, interviewed Foster at a QuickTrip gas station, near Jefferson, Georgia. During a recorded interview, after being advised that he was not in custody, Foster acknowledged having sent the threatening communication to Trooper Barthelemy. After an initial denial, Foster indicated he had sent the threats as a "gag," and with "idle hands." He went on to say that it was a mischievous prank and that he had no intention of actually harming the trooper. Foster advised that he had cut out the photo of Trooper Barthelemy some time ago and that it

had gotten folded up in the personal space at his parents' home. Foster indicated he had mailed the letter, but did not say from where. Foster had actually written the threats and sealed the envelope some time ago, but before being shown the threats, said he recalls having written something about shooting and something about a bullet. He denied having anything against Trooper Barthelemy, Lt. King, or the police. Foster used the term "All fascist pigs must die" because he had heard it previously on television.

14. Title 18, U.S.C. § 876 provides in relevant part as follows:

> (c) Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to . . . injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

15. Based on the information contained in this continuation, I respectfully submit that there is probable cause to believe that Lee Dalton Foster mailed a threatening communication, in violation of Title 18, USC 876(c).